**The document below is hereby signed.**

**Dated: August 1, 2012.**



_____
**S. Martin Teel, Jr.
U.S. Bankruptcy Judge**

```
            UNITED STATES BANKRUPTCY COURT
             FOR THE DISTRICT OF COLUMBIA

In re                         )
                              )
MARTHA A. AKERS,              )   Case No. 07-00662
                              )   (Chapter 13)
              Debtor.         )
_____)
                              )
MARTHA A. AKERS,              )
                              )
              Plaintiff,      )
                              )
         v.                   )   Adversary Proceeding No.
                              )   12-10020
BEAL BANK, et. al,            )
                              )   Not for publication in
              Defendants.     )   West's Bankruptcy Reporter.
```

MEMORANDUM DECISION RE BEAL BANK'S MOTION TO DISMISS

Before the court is Beal Bank's motion to dismiss the adversary complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), incorporated by Bankruptcy Rules of Civil

Procedure 7009 and 7012(b).  Beal Bank seeks dismissal of the complaint for three independent reasons: (1) Akers' claims are barred by res judicata, (2) the complaint fails to meet the heightened pleading standards for an action alleging fraud, and (3) her lawsuit is barred by the statute of limitations.  The court will grant the motion to dismiss for the reasons that follow.

I

In her complaint in this adversary proceeding, Akers sets out four claims.  She first argues that "Defendant continue [sic] to willfully misrepresent account payments from the escrow account and account activity and management.  The payment invoice, loan history statement and correspondence sent from Defendant to Plaintiff contradict each other [a]s it relates to account payments and activity."  Complaint ¶ 2.  Second, she alleges that she made payments to Beal Bank for her mortgage loan that were to be applied to the principal and interest, but instead were applied to late fees which had been discharged in a prior chapter 13 case.  Complaint ¶ 3.  Third, she asserts that she made timely payments into an escrow account, but was charged penalties and interest for late property tax payments.  Complaint ¶ 4.  Fourth and finally, Akers contends that Beal Bank submitted a fraudulent proof of claim in the bankruptcy proceeding. Complaint ¶ 5. Specifically, she alleges:

> Defendant committed fraud when submitting the pre-petition arrears proof of claim in Bankruptcy Court with

> the breakdown of the fee[]s.
> - Incorrect alleged delinquent monthly payment amount $10,188.15
> - Fraudulent amount of $18,148.52 pre-petition escrow shortage.
> - Movant foreclosure fees and costs listed $2,146.08
> - Defendant foreclosured [sic] on entitled property after a Chapter -13 Bankruptcy proceeding was filed and notice was personally served on Defendant. Now in violation of Rule 11(b) and subject to penal sanctions.
> Plaintiff request Court initiative to show cause why conduct specifically stated by Defendant has not violated rule 11(b).

Complaint ¶ 5. Akers seeks "$1,000,000.00 in Personal Injury, forced restraint, mental and financial hardship and coercion illegally applied" and "$1,169,200.00. Property Damages, The District of Columbia property assessment value in 2007." Complaint ¶¶ c, d.

II

The court lacks subject matter jurisdiction over Akers' first three claims. Federal bankruptcy jurisdiction, as defined in 28 U.S.C. § 1334, confers "original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b). The district court has referred such matters to the bankruptcy court pursuant to 28 U.S.C. § 157.

Akers' first three claims essentially allege that Beal Bank violated the terms of the deed of trust by misrepresenting payments, misapplying payments on her mortgage loan, and

inappropriately charging late fees and penalties.  Because these claims arise under state law, not under the Bankruptcy Code, there is no "arising under title 11" jurisdiction over these claims.

Moreover, there is no "arising in" jurisdiction over these claims.  As this court has explained:

> "[A]rising in" proceedings are those that occur in the case and that somehow have an effect on the administration of the panoply of rights and duties under the bankruptcy laws. . . .  In other words, an "arising in" proceeding is one that must not only arise from events in the bankruptcy case but that by its nature is of an "administrative" character because it requires a disposition in the bankruptcy case in order for the bankruptcy case to be administered.

*Virginia Hosp. Center-Arlington Health Sys. v. Akl (In re Akl)*, 397 B.R. 546, 549-550 (Bankr. D.D.C. 2008).  On September 13, 2010, Akers completed her payments on the confirmed chapter 13 plan as modified.[1]  The chapter 13 standing trustee filed her final report and account on March 23, 2011 (Case No. 07-00662, Dkt. No. 342).  The estate has been fully administered.  Accordingly, these claims do not require disposition in the bankruptcy case in order for the bankruptcy case to be administered.

For similar reasons, the court does not have "related to" jurisdiction over these claims.  There is no conceivable way that litigation of these claims could affect the administration of the

---

[1] Aker's chapter 13 plan was confirmed on February 25, 2008 (Case No. 07-00662, Dkt No. 53) and modified on November 3, 2008 (Dkt No. 92), and again on March 23, 2011 (Dkt. No. 340).

bankruptcy estate because the plan has been completed and the estate has been administered.  *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 226 (3d Cir. 2004) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*.") (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

### III

The court does have subject matter jurisdiction over Akers' final claim, to the extent that it can be viewed as in essence an objection to Beal Bank's proof of claim.  However, this claim must also be dismissed.

Akers has not stated a claim upon which relief can be granted, and the court will dismiss her claim pursuant to Federal Rule Civil Procedure 12(b)(6).  Other than a reference to "Rule 11(b)," the complaint does not invoke any statute or case law that provides an independent cause of action for damages for an alleged fraudulent proof of claim, and the court is not aware of any such provision.  To the extent her reference to "Rule 11(b)" amounts to a motion for sanctions under Federal Rule of Bankruptcy Procedure 9011, she has not complied with the safe harbor provisions of Rule 9011(c)(1)(A).  Moreover, there is no independent cause of action under Rule 9011.

Akers' claim may also be understood as an objection to Beal

Bank's proof of claim on the basis that Beal Bank's claim is excessive. Akers' original confirmed plan called for Beal Bank's prepetition arrears claim to be paid in full, and that claim was partially paid until the debtor's plan was modified to call for the claim to be paid directly. Beal Bank's proof of claim is for $31,586.74 in prepetition arrears. *See* Claim No. 3-1 on the Claims Register. According to the chapter 13 standing trustee's final report and account, Beal Bank was paid $11,266.78 plus $4,695.86 in interest. *See* Case No. 07-00662, Dkt. No. 342. Akers has not objected that Beal Bank was paid, under the plan, more than it was entitled to. Instead, she claims that the $31,586.74 amount of Beal Bank's proof of claim was excessive, without asserting that she did not even owe the $11,266.78 (plus $4,695.86 in interest) that was paid pursuant to the $31,586.74 claim.

Treating Akers' claim as an objection to the unpaid balance of the claim, the objection also fails under Fed. R. Civ. P. 12(b)(6). Akers' chapter 13 plan has been completed and Beal Bank has been paid pursuant to that plan. Therefore, the plan is no longer subject to modification and determining whether the unpaid balance of Beal Bank's claim should be allowed would serve no purpose in her bankruptcy case. Akers amended her chapter 13 plan to pay Beal Bank directly and as a result, it is irrelevant whether the unpaid balance of Beal Bank's claim is allowed. *See Consent Order*, Case. No. 07-00662, Dkt. No. 340. Accordingly,

the validity of the unpaid balance of Beal Bank's proof of claim is an academic issue, and Akers would not be entitled to any relief *in this bankruptcy case* via an objection to claim even if the unpaid balance of Beal Bank's proof of claim were determined to be in error.[2]  Akers' claim, construed in the light most favorable to Akers, does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

IV

For all of these reasons, Beal Bank's motion to dismiss the complaint will be granted.  A separate order follows dismissing the complaint with leave to amend within 14 days after entry of the order.

[Signed and dated above.]

Copies to: All counsel of record.

---

[2]  If Beal Bank's claim had been paid in full and *was* excessive, that would present an issue as to whether only the trustee would have standing to recover the excessive amount.  *See* 11 U.S.C. § 502(j) (referring to "the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.")  At least one court has held that a debtor has standing under § 502(j) to recover an excessive amount paid on a claim.  *See Kerney v. Capital One Fin. Corp.* (*In re Sims*), 278 B.R. 457, 476-477 (Bankr. E.D. Tenn. 2008).  In this case it would be silly to require the trustee to bring such an action because any proceeds recovered would be distributed to the debtor because all allowed unsecured claims have been paid in full as required by the terms of the confirmed plan.